IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE D. CONNELL, and ) <br> HI-TECH BEDS SYSTEMS, CORPORATION, ) <br> ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> KLN STEEL PRODUCTS COMPANY, LTD, ) <br> and CLARK/BLINDERMAN/KNIGHT, LLC, ) <br> ) <br> Defendants. | Case No. 04 C 194 <br><br> Judge Virginia M. Kendall |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Michelle Connell and Hi-Tech Beds Systems, Corporation (together "Plaintiffs") have brought suit against KLN Steel Products Company ("KLN") and Clark/Blinderman/Knight, LLC ("Clark" and together with KLN, "Defendants") for patent infringement and various violations of state law. Defendants have moved for summary judgment on Count I of Plaintiff's Complaint, alleging patent infringement. Because the Court finds that there are genuine issues of material fact as to the government's authorization and consent to infringement by Defendants, summary judgment on Count I of Plaintiffs' Complaint is denied. Further, because the issues of fact that are presented in this motion and the additional motion for summary judgment on the remaining counts involve the actions of the United States Navy, the Court directs the parties to adjudicate the role of the Navy's involvement in the alleged infringement in the appropriate forum for the suit – the Federal Court of Claims. This Court will stay the matter pending the initial resolution of the dispute involving the Navy's involvement for the following reasons.

**Facts**

Plaintiffs and KLN compete in selling metal bunk beds to be used in various sites including military barracks. Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as to Claim of Patent Infringement at ¶ 7 (hereafter "Def. 56.1 Facts at ¶ __"). Plaintiff Michelle Connell holds patent # 6,611,973B2 (the " '973 Patent"), titled the Bed Structure with Storage Area (the "SB-200"). Def. 56.1 Facts at ¶ 8, Plaintiffs' Corrected LR56.1(b)(3) Statement of Additional Facts at ¶ ccc (hereafter "Pltf. 56.1 Facts at __"). Plaintiff Hi-Tech Systems Corporation ("Hi-Tech") licenses the '973 Patent. Pltf. 56.1 Facts at ¶ rr. Defendant KLN manufactures the Model 7301 SSLD Berth bunk beds.

Plaintiffs allege that they created and patented a unique bed design to be used by the United States Navy ("Navy") in their barracks. Pltf. 56.1 Facts at ¶ uu, vv. This design was developed with the interaction and involvement of the Navy, though not with any funding from the Navy. *Id.* In 2002, the Navy was aware that KLN also manufactured a bed that could be used by the Navy in barracks and that they could manufacture the beds at a lower price. Defendants' Confidential Exhibits to Statement of Material Fact at Ex. F (hereafter "Def. Ex. __"). The Navy also was aware that Plaintiffs claimed a patent on their unique design of metal bunk beds. Def. Exs. F, G. The Navy purchased a number of beds from Plaintiffs to be used in two recruit barracks. Def. Ex. B pg. 4. In 2003, pursuant to a subsequent contract and subcontract, the Navy provided funds to purchase beds from Defendants to be used in six to eight additional barracks for total contracts equaling several million dollars.

In 2004, Plaintiffs filed suit against Defendants alleging patent infringement and violations of Illinois tort claims of misappropriation of trade secrets, unfair business practices, and interference

with prospective business relationships. *See* Complaint, Counts II - IV. Plaintiffs allege that Defendants both infringed their patent and accessed their protected design plans and other proprietary information, which information had been provided to the Navy. *See* Complaint at ¶¶ 30-32; *see also* Pltf. 56.1 at ¶¶ n, o, oo-ss. After extensive briefing in 2005, Defendants filed their affirmative defense of 28 U.S.C. 1498(a) claiming that any infringement was directed by the Navy and that Plaintiffs only course of redress was against the Navy in the Federal Court of Claims. The parties filed briefs and Rule 56 statements of fact setting forth their respective positions regarding the involvement of the Navy in the two contracts in question.

*The 227 Contract*

On August 15, 2000, the Navy issued a Request for Proposal ("RFP") to solicit bids for the design and construction of two new recruit training barracks at the Great Lakes Naval Recruit Training Command in Great Lakes, Illinois. Def. 56.1 Facts at ¶ 9. Clark was awarded the contract, N68950-00-C-0227 (the "227 Contract"), through a competitive bidding process. Def. 56.1 Facts at ¶ 10. Clark in turn subcontracted the contract work to Clark/Blinderman Joint Venture ("CBJV"), which in turn subcontracted certain parts of the work for the 227 Contract to other sub-subcontractors. Def. 56.1 Facts at ¶ 11. The RFP for the 227 Contract provided in section E2000 that all interior furnishing in the barracks, including beds, would be purchased from GSA Schedule Contracts, and would be separately funded at a later date. Plaintiffs' Confidential Appendix Volume II at Tab 24 (hereafter "Pltf. App. Vol. __ at Tab __").

CBJV accepted proposals for the supply of bunk beds for the barracks from both Hi-Tech and KLN and submitted those proposals to the Navy. *See* Def. Ex. E. On March 4, 2002, the Navy issued a contract modification No. P00006, modifying the 227 Contract to allow the purchase of Hi-

3

Tech's SB200 bed. *See* Def. Ex. H; Pltf. Appx. Vol. II at Tab 23 (identical exhibits). The modification No. P00006 is identified as "Modification of Contract N68950-00-C-0227;" its text describes the modification as directing CBJV to "provide 1512 SB-200 Storage Sleeper Bed GSA Contract #GS-27F-0011M" and to do so "in accordance with Section E2000, Furnishings, of the RFP." *Id.* CBJV issued a Purchase Order to Hi-Tech for the beds "in accordance with Modification No. P00006." Def. 56.1 Facts at ¶ 16; Def. Ex. I.

*The 006 Contract*

On September 27, 2001, the Navy issued a second RFP, No. N68950-01-R-0006 (the "006 RFP") for the design and construction of multiple recruit barracks at the Great Lakes Recruit Training Command. Def. 56.1 Facts at ¶ 17. The 006 RFP incorporated Federal Acquisition Regulation ("FAR") clause 52.227-1, entitled "Authorization and Consent." Def. 56.1 Facts at ¶ 18. The Authorization and Consent Clause specifically states that

> (a) the Government authorizes and consents to all use and manufacture, in performing this contract, or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (I) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.
>
> (b) The Contractor agrees to include, and require inclusion of, this clause, suitably modified to identify the parties, in all subcontracts at any tier for supplies or services (including construction, architect-engineer services, and materials, supplies, models, samples, and design or testing services expected to exceed the simplified acquisition threshold); however, omission of this clause from any subcontract, including those

4

at or below the simplified acquisition threshold, does not affect this authorization and consent.

48 C.F.R. § 52.227-1. The 006 RFP also contains a section E2000, which section states (like the 227 Contract) that all interior and movable furnishings will be purchased pursuant to GSA Schedules, and will receive a budget at a later date. Pltf. App. Vol. II at Tab 26.

On May 20, 2002, Clark was awarded the contract for the 006 RFP (hereinafter the "006 Contract"). The 006 Contract contained a list of "Contract Clauses" incorporated into the contract; one of the Contract Clauses was 48 C.F.R. § 52.227-1. Def. 56.1 Facts at ¶ 22. Clark subcontracted some of the construction work to CBJV. Def. 56.1 Facts at ¶ 21. In May 2003, CBJV sent a letter to potential bidders, including Hi-Tech and KLN, stating that it would be soliciting bid information to present to the Navy for evaluation. Def. 56.1 Facts at ¶ 24. The parties disagree as to whether that letter was meant to be "under the 006 Contract;" Defendants represent that it was, while Plaintiffs represent with deposition testimony from the Navy that Clark had been advised that the 006 Contract would not be modified. Plaintiffs' Response to Def. 56.1 Facts at ¶ 24. Clark sent the various proposals to the Navy for selection. Def. 56.1 Facts at ¶ 25.

On June 27, 2003, the Navy selected KLN to be the supplier of the beds that would be in the barracks constructed under the 006 Contract, and directed Clark to place its order for beds with KLN. Def. 56.1 Facts at ¶ 27. As with the 227 Contract, the Navy issued several modifications to the 006 Contract in 2003 and 2004, allocating additional funds for the purchase of bunk beds from KLN. Pltf. App. Vol. II, Tab 25.

On August 15, 2003, CBJV and KLN entered into an agreement titled "Subcontract Agreement" for the purchase and installation of the KLN beds. Def. 56.1 Facts at ¶ 28; Def. Ex. P.

Plaintiffs dispute that the agreement titled "Subcontract Agreement" was a subcontract under the 006 Contract; Plaintiffs assert that the agreement was a contract pursuant to KLN's GSA Federal Schedule Supply Contract. Plaintiffs' Response to Def. 56.1 Facts at ¶ 28. KLN recorded GSA Industrial Funding Fees for at least some of the beds that went into the Great Lakes RTC. Pltf. App. Vol. VI at Tab 98. Plaintiffs' patent for the bunk beds issued on September 2, 2003. Def. 56.1 at ¶ 34.

## Discussion

### *Standard of Review*

Summary judgment is correct when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must construe all facts in a light most favorable to the non-moving party and view all reasonable inferences in the non-moving party's favor to determine if a genuine issue of a material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is one that is outcome-determinative under governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). In analyzing the facts for the purposes of a summary judgment, the Court will "limit its analysis of the facts…to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Parties must cite to specific support in the record. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

### *Overview 28 U.S.C. § 1498*

Section 1498 provides that:

6

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a).

The original purpose of § 1498 was "to stimulate contractors to furnish what was needed for the War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents." *Madey v. Duke Univ.*, 413 F. Supp. 2d 601, 606 (M.D.N.C. 2006), *citing Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 345 (1928). The Federal Circuit has noted that the coverage of § 1498 should be broad because Congress intended "to allow the Government to procure whatever it wished regardless of possible patent infringement." *TVI Energy Corp. v. Blane,*, 806 F.2d 1057, 1060 (Fed. Cir. 1986).

The Federal Circuit has held that in a lawsuit between private parties, one of whom is a government contractor, § 1498(a) can operate as an affirmative defense to liability where the contractors's use of a patented invention is "for the government" and with the "authorization and consent" of the government. *See Madey v. Duke Univ.*, 307 F.3d 1352, 1359 (Fed. Cir. 2002); *see also Crater Corp. v. Lucent Techs., Inc.*, 225 F.3d 1361, 1364 (Fed. Cir. 2001). For a contractor to claim the protection of § 1498 as an affirmative defense, the contractor must show that its use was (i) "for the Government;" and (2) "with the authorization and consent of the Government." 28

U.S.C. § 1498(a). A use is "with the authorization and consent of the Government" in cases whether the Government either expressly or impliedly consents to infringement by the contractor. *See Madey*, 413 F.Supp.2d at 607, *citing Applera Corp. v. MJ Research Inc.*, 311 F. Supp. 2d 293, 299 (D. Conn. 2004). As an affirmative defense, the burden is on the party asserting the defense to show the existence of express or implied authorization and consent. *Madey*, 413 F. Supp. 2d at 609.

In reviewing express consent, courts generally rely on clear, express authorization and consent in a government contract. *See, e.g. Parker Beach Restoration, Inc. v. U.S.*, 58 Fed. Cl. 126, 132 (2003) (noting that although not required by the language of § 1498, "the government generally consents and authorizes the use of a particular device by inserting an authorization and consent clause into its contracts"); *Hughes Aircraft Co. v. U.S.*, 534 F.2d 889, 901 (Ct. Cl. 1976). Express consents may be broad, covering any invention or any use, or may be limited only to specific inventions or uses. *See Carrier Corp.*, 534 F.2d at 249 (noting that the government can limit the scope of its authorization and consent.) The federal procurement regulations, which contain language authorizing and consenting to infringement, show varying degrees of breadth in scope of authorization language. *See* 48 C.F.R. § 52.227-1 (containing several variations of authorization and consent language). By choosing the language of the authorization and consent, "the Government may control the extent of patent infringement it chooses to authorize, and the corresponding liability it chooses to accept." *Madey*, 413 F. Supp. 2d at 608.

When a government contract does not provide express consent, the Government may nonetheless be found to have consented to patent infringement through implied consent. *See TVI Energy Corp.*, 806 F.2d at 1060. Implied consent includes situations where: (i) the government expressly contracted for work to meet certain specifications; (ii) the specifications cannot be met

without infringing on a patent; and (iii) the government had some knowledge of the infringement." *Larson v. United States*, 26 Cl. Ct. 365, 370 (1992). Implied consent may also be found through contracting officer instructions, specifications or drawings from the government impliedly sanctioning infringement, or Government intervention in pending infringement litigation. *See Hughes*, 534 F.2d at 901. Any implied consent by the government under § 1498 should be narrowly construed, as it constitutes a waiver of sovereign immunity. *Madey*, 413 F. Supp. 2d at 609, *citing Parker Beach*, 58 Fed. Cl. at 132-34.

## *Express Consent*

Defendants argue that because the Navy issued the 006 Modification to the 006 Contract in order to authorize and fund the specific purchase of the KLN beds, the Subcontract Agreement between CBJV and KLN to carry out the requirements of the 006 Modification is a subcontract to the 006 Contract. Defendants argue that the language of the Authorization and Consent clause in the 006 Contract, which language is a verbatim copy of 48 C.F.R. § 52.227-1, is sufficiently broad to encompass any infringement that occurs in any product purchased under the 006 Contract, the 006 Modification, and any subcontracts. Therefore, argue Defendants, the Court should read the Authorization and Consent clause in the 006 Contract to mean that the Navy assumed liability for any infringement that took place as a result of the Subcontract Agreement.

Plaintiffs, on the other hand, argue that the Subcontract Agreement is not governed by the Authorization and Consent clause in the 006 Contract. Plaintiffs reason that the plain language of the Section E2000 of the 006 Contract, as well as the language of the 006 Modification, both indicate that the Navy did not consent to infringement through purchase of the beds or any other movable furnishings in the barracks. Because Section E2000 of the 006 Contract specified that movable

9

furnishings would be purchased at a later date "from GSA schedules according to Federal Acquisition Regulations," and because the 006 Modification allocated money to Clark to purchase the KLN bunk beds "in accordance with Section E2000" and "under GSA Contract GS-27F-2013B and GS-27F-2041B," Plaintiffs argue that a genuine issue of fact exists as to whether the Subcontract Agreement operates under the terms of the GSA Contracts rather than the terms of the 006 Contract. The GSA Contracts do not contain an Authorization and Consent clause, so there is no authorization or consent from the Navy to infringe Plaintiffs' patent.

Plaintiffs have raised a genuine issue of material fact as to whether the Navy expressly authorized and consented to patent infringement by Defendants. The 006 Modification authorized the purchase of KLN's bunk beds consistent with the E2000 section of the 006 Contract, which portion of the 006 Contract had reserved funding for movable furnishings until a later date. While the 006 Modification specifically named the KLN Model 7301SSLD Berth as the product that should be purchased, the Modification reiterated that the purchase was to be made "in accordance with Section E2000" and instructed Clark to purchase the beds "under GSA Contracts GS-27F-2013B and GS-27F-2041B**." This case is analogous to the facts of *Madey v. Duke University*, 413 F. Supp. 2d 601 (M.D.N.C. 2006), in which the court denied summary judgment to a government contractor relying on the same Authorization and Consent language in factual circumstances similar to those presented here. In denying summary judgment, the court reasoned that the authorization and consent language was limiting rather than all-encompassing (the same language, it should be noted, as is present in the 006 Contract). *See id.* at 619. Additionally, the court reasoned that the documents raised by the non-movant showed that a later amendment to the government contract potentially

removed the authorization and consent that had previously been given for the entire project. *See id.* at 619-20.

The internal inconsistency in the contract language, as well as the impact of the modification on the original language of the 006 Contract, make the contract at minimum ambiguous, such that extrinsic evidence of the contracting parties' intent needs to be heard. Plaintiffs have submitted testimony that the Navy did not write the 006 Contract or the Modification with the intent to authorize and consent to infringement. Defendants argue that Navy officials testifying in support of Plaintiffs lacked authority to make decisions, and argue in their reply brief that the GSA is immaterial because none of the required GSA procedures were followed in this case. The Court cannot address the merits of these arguments, however, because testimony about the degree to which GSA procedures were followed in this instance, and the authority of those testifying, are issues of fact that merit trial by jury. Likewise, any decision as to the relative credibility of the different Navy officials opining on consent to liability is an issue of material fact requiring determination by a jury.

*Implied Consent*

The government can also impliedly "authorize and consent" to patent infringement, even if it has not expressly consented to the infringement. In reviewing whether the government impliedly consented, courts look to whether (i) the government expressly contracted for work to meet certain specifications; (ii) the specifications cannot be met without infringing on a patent; and (iii) the government had some knowledge of the infringement. *Larson*, 26 Cl. Ct. at 370 . Defendants argue that the Navy's explicit decision to order the KLN beds, and the Navy's continued acceptance of deliveries of the KLN beds, including after this case commenced, require summary judgment for the Defendants on the basis of implied consent.

This is strong evidence in favor of implied consent, but it is not dispositive evidence. As discussed above, the 006 Modification specifically directed Clark to purchase the KLN beds, but it specifically directed that they be purchased under GSA contracts. The Navy accepted delivery of the beds, but the Court cannot assume that just because the government purchased infringing material the government consented to infringement. Plaintiffs have produced evidence suggesting that the Navy wrote the "salient characteristics" for the bed - the characteristics that must be fulfilled by any product selected - with the intent to make the description generic enough that Plaintiffs' patent need not be infringed in order to make beds that would fulfill the Navy's needs. Additionally, Plaintiffs have produced evidence suggesting that the Navy believed Clark had analyzed the substance of the different offers for the beds, such that the Navy need only take the bed with the lowest price. *See* Stringer Dep., Pltf.'s Appx. Vol. I at Tab 6. Taking disputed facts and testimony in the light most favorable to Plaintiffs, a jury could find that the Navy did not impliedly consent to patent infringement when it selected the KLN beds.

**Transfer of the 1498(a) Affirmative Defense is Necessary**

In light of the foregoing discussion, it is clear to the Court upon a close reading of the material underlying Defendants' motion for summary judgment that there exists a genuine issue of material fact as to whether the Navy consented to potential patent infringement by KLN. Upon review of the second motion filed by Defendants for summary judgment as to Plaintiffs' remaining tort and contract claims, it is also clear that the Navy played a material role in the events underlying the remaining claims as well.

Both sides present the testimony of officials from the Navy, internal correspondence between Navy officials, and Navy documents to support their positions at summary judgment. The Navy,

however, has never been brought into this action, and to decide the credibility of the Navy witnesses in order to determine whether their actions evidence the Navy's express or tacit consent to liability would be to try the Navy *in absentia*.

The degree of the Navy's consent to the actions underlying this suit is potentially dispositive of Defendants' liability for any of the claims. Therefore, the issue of the Navy's express or implied consent to infringement, knowledge of trade secrets, and/or intention to contract with Plaintiffs should be determined before the rest of the case is tried. To do otherwise potentially would cause all parties to spend unnecessary funds trying a complicated patent and trade secrets trial in this court only to have the entire case be retried against the Navy in the Court of Federal Claims.

In this case, the Court finds that the Navy is an indispensable party to any determination of whether the Navy consented to patent infringement liability, and an indispensable party to a suit raising issues of implied contract and exposure of proprietary information in the possession of the Navy. The Court lacks jurisdiction over the Navy in a suit for patent infringement pursuant to 28 U.S.C. § 1498. If the Navy is not part of this case, the Court cannot reach the merits of Defendants' affirmative defense that they were operating with the authorization and consent of the Navy.

Therefore, the Court hereby transfers this issue of the affirmative defense of 1498(a) to the Court of Federal Claims pursuant to 28 U.S.C. § 1404 for joinder of the Navy under Rule 19 and joinder of any necessary additional claims by or against the Navy under Rule 18(a). The Court of Federal Claims may choose to adjudicate the Navy's consent to infringement along with all other claims, or in its discretion remand all or part of this case back to this Court in the event that it finds that the Navy did not consent to liability and the case remains between private parties. *See Nat'l Med. Enter., Inc. v. U.S.*, 28 Fed. Cl. 540 (1993) (The Court of Claims as transferee court may

retransfer back to the court of original jurisdiction). This Court will stay the matter pending the Court of Claims' adjudication of the Navy's role in this dispute.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: September 13, 2006